**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| **In re:** | Chapter 7 |
| **MELISSA MARIE BOWEN,** | Case No. 12-60622 |
| Debtor. | |
| **TIFFANY D. SMITH,** | |
| Plaintiff, | |
| v. | Adversary Proceeding No. 12-06099 |
| **MELISSA M. BOWEN,** | |
| Defendant. | |

**MEMORANDUM OPINION DENYING PLAINTIFF'S COMPLAINT**
**SEEKING A DENIAL OF DISCHARGE**

This matter comes before the Court on Tiffany D. Smith's (the "Plaintiff") complaint seeking to deny the Chapter 7 discharge of Melissa M. Bowen (the "Debtor" or "Defendant") under 11 U.S.C. § 727(a)(2)(A). The trial was conducted on May 20, 2013. During the trial, the parties presented argument, submitted numerous exhibits, and elicited testimony from the Debtor. At the conclusion of the trial, the Court took the matter under advisement. While the matter was under advisement, the Honorable William E. Anderson, presiding trial judge, passed away, and the case was reassigned to the undersigned judge. Based on the record as established at trial, the Court makes the following findings of fact and conclusions of law.[1]

---

[1] After the case was reassigned to the undersigned judge, neither party moved the Court to rehear the matter. Out of an abundance of caution, the undersigned judge held a conference call on September 17, 2013, to discuss the issue of whether the parties wished for the matter to be reheard or whether reliance on the record was satisfactory. *See Smith v. Bowen (In re Bowen)*, No. 12-06099 (Bankr. W.D. Va. Sept. 12, 2012) ECF No. 51. Although the date and time was confirmed with both parties a week prior, only Plaintiff's counsel appeared telephonically. *Id.* Plaintiff's counsel had no objection to the Court relying on the record as established at trial. *Id.*

1

# FACTS

The relevant facts of this case are largely uncontested. This dischargeability proceeding stems from a boating accident in August of 2009 involving the Plaintiff, the Debtor, and the Debtor's then-husband (the "Husband"). Trial Transcript (hereinafter "Transcript") at 4, *Smith v. Bowen (In re Bowen)*, No. 12-06099 (Bankr. W.D. Va. Sept. 12, 2012) ECF No. 49. The Plaintiff suffered serious injuries in the accident. *Id.* at 5. Following the accident, the Plaintiff filed a personal injury lawsuit on March 3, 2010, against the Debtor's Husband for one million dollars. *Id*. at 7; *and* Complaint at ¶ 5, *Smith v. Bowen (In re Bowen)*, No. 12-06099 (Bankr. W.D. Va. Sept. 12, 2012) ECF No. 1.

On September 9, 2009, after a physical altercation, the Debtor separated from her Husband. Transcript at 16, 66, *In re Bowen*, No. 12-06099, ECF No. 49. The couple officially divorced in February of 2012 without any formal property settlement or support agreement. *Id.* at 13, 47 – 48.

In March of 2011, Plaintiff amended her personal injury claim to add the Debtor as a defendant. Shortly thereafter, in April, the Debtor surrendered certain interests in business and personal property to her Husband, including her share of the family business, an interest in a work vehicle for the business, as well as an interest in a personal vehicle. *Id.* at 21, 52 – 53. The Debtor testified that she transferred her interest in this property without demanding anything in return because it "was the easiest way [to] just cut all ties, end it, and start over." *Id.* at 22.

In late June 2011, as the state court trial was approaching, Plaintiff made a settlement demand of $750,000.00. *Id.* at 5. Debtor and her Husband apparently turned down the settlement offer because the state court later entered judgment for $700,000.00 in Plaintiff's favor in September of 2011. *Id.* at 4.

2

Following Plaintiff's settlement offer, but before judgment was entered, Debtor and her Husband sold two-parcels of real property (the "Property") to Debtor's then-sister-in-law. Debtor claims she did not learn the identity of the purchaser until the date of the closing, July 22, 2011. *Id.* at 31, 33. The total purchase price for the Property was $41,750.00 of which the Debtor received $0. *Id.* at 33, 35. Debtor signed the sale contract on July 1, 2011. *Id* at 31 – 33, 41. According to the Debtor, however, she was unaware she was signing a sales contract because she was presented with only the signature page and was told by her Husband that it was a dual-agent agreement. *Id.* at 31.

On March 15, 2012, the Debtor filed a petition in this Court for relief under Chapter 7 of the Code. Approximately six months later, Plaintiff filed a complaint and this adversary proceeding seeking to bar the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A).

## JURISDICTION

The Court has jurisdiction to hear this matter under 28 U.S.C. §§ 157 and 1334. The issue of whether a debtor is entitled to a discharge is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## CONCLUSIONS OF LAW

Plaintiff's complaint alleges that Debtor transferred the Property within one year of her bankruptcy with the intent to hinder, delay, or defraud Plaintiff and, therefore, should be denied a discharge in her underlying bankruptcy case pursuant to 11 U.S.C. § 727(a)(2)(A). *See* Complaint, *In re Bowen*, No. 12-06099, ECF No. 1. Section 727(a)(2)(A) provides that a court shall grant a debtor a discharge, unless a debtor has transferred property within the year immediately preceding the filing of a bankruptcy petition and with the intent to hinder, delay, or defraud a creditor. Plaintiff alleges that Debtor's selling of the Property approximately seven months prior to her filing for bankruptcy relief was with the intent to hinder, delay, or defraud

3

the Plaintiff, a judgment creditor. As such, Plaintiff alleges that the elements of section 727(a)(2)(A) are satisfied, and Debtor, therefore, is not entitled to a discharge in her bankruptcy case. Debtor does not dispute she sold the Property seven months prior to filing for bankruptcy. Therefore, the only question before the Court is whether the Debtor sold the Property with the "intent to hinder, delay, or defraud" the Plaintiff.

## Burden of Proof under 11 U.S.C. § 727(a)

The primary purpose of bankruptcy law is to give honest debtors a fresh start. *Farouki v. Emeritas Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994). In keeping with this purpose, section 727 provides honest debtors with a general discharge of their indebtedness, so as to relieve the "pressure and discouragement of preexisting debt." *Id.* (quoting *Lines v. Frederick*, 400 U.S. 18, 19 (1970)) (internal quotations omitted). When debtors "play fast and loose with their assets or with the reality of their affairs," however, section 727(a) provides the court with authority to deny debtors their fresh start by prohibiting discharge. *Id.* (quoting *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987)). The denial of a discharge is an extreme penalty, and, as such, section 727(a) is generally construed liberally in the debtor's favor. *In re Golob*, 252 B.R. 69, 75 (Bankr. E.D.Va 2000) (quoting 6 Collier on Bankruptcy ¶ 727.01[4] (Lawrence P. King ed., 15th rev. 1999)).

Rule 4005 of the Federal Rules of Bankruptcy Procedure assigns the burden of persuasion to the party objecting to discharge. FED. R. BANKR. P. 4005. *See Farouki*, 14 F.3d at 249; *Golob*, 252 B.R. at 75 (citing *Farouki*). The burden may shift to the debtor to provide a satisfactory explanation of certain actions or deeds once the objecting party has established a *prima facie* case, but the burden ultimately rests with the objecting party to prove its objection by a preponderance of the evidence. *Id*.

4

**Intent to Hinder, Delay, or Defraud under 11 U.S.C. § 727(a)(2)(A)**

In order for the court to deny discharge under section 727(a)(2), the objecting party must prove that the debtor had the actual intent to "hinder, delay, or defraud;" constructive intent is not sufficient. *In re Smoot*, 265 B.R. 128, 142 (Bankr. E.D.Va. 1999); *Zanderman, Inc. v. Sandoval (In re Sandoval)*, 153 F.3d 722, *2 (4th Cir. 1998) (unpublished). As direct evidence of a fraudulent intent is rarely available, actual intent may be inferred through the presence of "badges of fraud." *Id*. Such badges include:

> (1) A relationship between the debtor and the transferee; (2) Lack of consideration for the conveyance; (3) Debtor's insolvency or indebtedness; (4) Transfers of debtor's entire estate; (5) Reservation of benefits, control, or dominion by the debtor; (6) Secrecy or concealment of the transaction; and (7) Pendency or threat of litigation at the time of transfer.

*Smoot*, 265 B.R. at 142. No single badge is necessary to prove actual intent; the presence of only one badge may be sufficient; and certainly, the presence of several badges can inescapably lead to the conclusion that the debtor possessed an actual intent to hinder, delay, or defraud. *See Smoot*, 265 B.R. at 142; *Sandoval*, 155 F.3d at *2.

Plaintiff's complaint alleges, and Plaintiff appears to have established, the existence of badges (1), (2), and (7). These factors taken together are sufficient to establish Plaintiff's *prima facie* case, but do not necessarily establish actual intent by a preponderance of the evidence. As such, the Court must consider whether Debtor has provided a satisfactory explanation for her actions, sufficient to satisfy the Court that no actual intent to hinder, delay, or defraud exists. *Smoot*, 265 B.R. at 143.

<u>Relationship between Debtor and Transferee</u>

Plaintiff has shown and it is uncontested that a familial relationship existed between the Debtor and the transferee because the Plaintiff has shown that Debtor and her Husband

5

transferred the Property to the Debtor's then-sister-in-law. The Court, however, does not believe that the existence of a relationship between the Debtor and the transferee establishes by a preponderance of the evidence that Debtor had the actual intent to hinder, delay, or defraud the Plaintiff in this case. The Court finds that three facts establish that no actual intent existed.

First, the relationship between the Debtor and the transferee was a strained relationship. Generally, inter-family transfers provide sufficient grounds for establishing fraud. *See Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 307 (11th Cir. 1994). The transfer in this case, however, was to the Debtor's estranged, then-sister-in-law. The Debtor's relationship with the transferee was dependent upon the Debtor's continued relationship with her Husband. Debtor had been separated from her Husband for almost two years at the time the transfer took place and had the intention of divorcing him. Transcript at 16, 47, *In re Bowen*, No. 12-06099, ECF No. 49. Because the Debtor separated from her husband prior to the transfer, there is sufficient reason to believe that the relationship between the Debtor and her then-sister-in-law was not on the best of terms. Although a relationship existed between the Debtor and the transferee, the familial status was ending. Furthermore, the Plaintiff provided no evidence of an on-going relationship or regular communication between the Debtor and the then-sister-in-law.

Second, the Debtor testified that she had no knowledge of the purchaser's identity until the sale closed on July 22, 2011. The Debtor, however, signed the sales agreement on July 1, 2011, which listed the then-sister-in-law as a purchaser. *See* Plaintiff's Exhibit 4, *Smith v. Bowen (In re Bowen)*, No. 12-06099 (Bankr. W.D. Va. Sept. 12, 2012) ECF No. 47. The Debtor testified that her Husband presented her with the signature page of the contract and told her she was signing a dual-agent agreement. Transcript at 31, *In re Bowen*, No. 12-06099, ECF No. 49. Plaintiff has provided no evidence that Debtor participated in negotiations with her then-sister-

in-law, but has provided some information to suggest that Debtor may have known the identity of the purchaser prior to closing.[2] While a lack of knowledge would be sufficient to establish a lack of actual intent, the presence of knowledge is not sufficient to establish actual intent. Had Plaintiff provided the Court with evidence of the Debtor's active participation in negotiations with the then-sister-in-law, or something more than mere knowledge of who was purchasing the property, the Court might be able to find that actual intent existed. *See Bane v. U.S. Trustee*, 2013 WL 942415, *2 (W.D. Va. 2013). Plaintiff, however, has failed to provide such evidence, and the fact that Debtor may have known she was selling to a family member when she signed the sales contract is not sufficient to show an actual intent to hinder, delay, or defraud.

Third, the purchase price paid is consistent with the amount one might have received from an arm's length transaction at that time, despite the fact that the amount received was significantly less than the original purchase price and the tax assessed value. The Property sold for $41,750. Plaintiff's Exhibit 4 at ¶3, *In re Bowen*, No. 12-06099, ECF No. 47. The Debtor and her Husband purchased the Property in 2001 for approximately $82,000. Transcript at 50 – 51, *In re Bowen*, No. 12-06099, ECF No. 49. In 2011, the tax assessed value of the Property was approximately $196,000. Plaintiff's Exhibit 1 at ¶6, *Smith v. Bowen (In re Bowen)*, No. 12-06099 (Bankr. W.D. Va. Sept. 12, 2012) ECF No. 44. The parties, however, agree that the appraised value of the Property in July 2011 was $70,000. Defendant's Exhibit C1, *Smith v. Bowen (In re Bowen)*, No. 12-06099 (Bankr. W.D. Va. Sept. 12, 2012) ECF No. 31; Defendant's Exhibit D1, *Smith v. Bowen (In re Bowen)*, No. 12-06099 (Bankr. W.D. Va. Sept. 12, 2012) ECF No. 32;

---

[2] The signature page of the sales contract lists the Debtor as the seller and the then-sister-in-law as a purchaser. This suggests that the Debtor knew on July 1, 2011, that the then-sister-in-law was purchasing the property, rather than on July 22, 2011, as she claimed. Transcript at 40 – 42, *In re Bowen*, No. 12-06099, ECF No. 49. While the document establishes that both parties signed the document on the same day, that fact is not necessarily inconsistent with the Debtor's testimony. The then-sister-in-law's name is hand written on the signature page and may have been added and signed after the Debtor signed the document; in which case, the Debtor would not have known that her then-sister-in-law was the purchaser. Plaintiff's counsel did not explore this question in his cross examination of the Debtor.

7

Transcript at 27, 60, *In re Bowen*, No. 12-06099, ECF No. 49. It is also uncontested that part of the Property had been on the market for over a year without any offers. Transcript at 33, *In re Bowen*, No. 12-06099, ECF No. 49. The Property consisted of vacant, unimproved lots. Given these facts and the general state of the real estate market in July 2011, a purchase price of approximately sixty percent of the appraised value of unimproved land is not surprising to this Court. When the Court considers that the parties had been attempting to sell part of the property for over a year without any interest and needed to liquidate the Property in order to pay their debts as they became due, this sale appears to be fairly consistent with what would be expected from an arm's length transaction under similar circumstances. *Miller*, 39 F.3d at 307 (finding that a transfer of property for less than the appraised value was reasonable given the debtors' need to turn illiquid assets into liquid assets). As the price paid by the then-sister-in-law is comparable to what might have been received by a stranger in an arm's length transaction under similar circumstances, the fact that the transferee was related to the Debtor does not establish by a preponderance of the evidence an actual intent to hinder, delay, or defraud the Plaintiff.

Taken individually, and as a whole, these three facts suggest the Debtor, more likely than not, did not actually intend to hinder, delay, or defraud the Plaintiff when she transferred the Property to her then-sister-in-law. Plaintiff's establishment of a mere relationship between the Debtor and the transferee, therefore, is not sufficient to meet her burden of establishing actual intent by a preponderance of the evidence.

Lack of Consideration

Plaintiff has established, and Debtor does not dispute, that Debtor received $0 from the sale of the Property. Transcript at 35, *In re Bowen*, No. 12-06099, ECF No. 49. The Debtor's Husband kept the proceeds and did not share them with the Debtor. *Id.* Plaintiff appears to argue

that Debtor did not receive any consideration for the sale of the Property because she did not physically receive any of the cash proceeds said sale. The Court, however, does not believe the Debtor's failure to share in the proceeds of the sale establishes that the Debtor failed to receive any consideration for the sale of the Property.

Consideration may include any benefit, interest, profit, promise, or right received by a party as an inducement to enter a contract. *See* Restatement, Second, Contracts, §§ 17(1), 71; *Good v. Dyer*, 119 S.E. 277, 282 (Va. 1923). While it is true that the Debtor did not physically receive any cash proceeds from the transfer, there was consideration for the transfer. As Plaintiff's Exhibit 4 shows, Debtor and her Husband sold their interest in the Property to Debtor's then-sister-in-law in exchange for the then-sister-in-law's payment of $41,750. Transcript at 33, *In re Bowen*, No. 12-06099, ECF No. 49. The payment of the $41,750 was the consideration paid for the Debtor and her Husband's joint interest in the Property.

Plaintiff appears more accurately to be arguing that Debtor did not share in the benefit of the consideration because her Husband never shared the proceeds with her. Plaintiff's argument fails to the extent she is arguing Debtor did not receive any benefit from the transfer, and, therefore, received no consideration for the transfer. Of the sale proceeds, approximately $33,000 of the $41,750 was used to satisfy mortgages on the property for which the Debtor was personally liable; another $1,582 was used to pay taxes on the property for which she was personally liable; another $1,400 was used to pay home owner association dues on the marital residence; and another $1,600 was used to pay for legal services to defend the Debtor from liability in a one million dollar personally injury suit. *Id.* Based on these figures, the Debtor received some benefit from approximately $37,582 of the $41,750 or approximately ninety percent of the funds received from the transfer. Debtor was told such benefits would be

forthcoming in the event she agreed to the sale. *Id.* at 30. The evidence suggests Debtor received consideration for the transfer of the Property and received a substantial benefit from the consideration. As such, Plaintiff cannot rely on this badge of fraud as grounds to prove Debtor's actual intent.

Pendency of Litigation at Time of Transfer

Through cross examination of the Debtor, Plaintiff has established the following timeline: Plaintiff filed a personal injury suit against the Debtor's Husband in March of 2010; Debtor was added as a defendant to the personal injury suit in March of 2011; a settlement demand of $750,000.00 was made on the Debtor and her Husband in June of 2011; Debtor and her Husband transferred the Property in July of 2011; and trial on the personal injury claim was held in September of 2011. The question the Court must answer is whether the timing of the transfer on the eve of trial is sufficient to find that Debtor actually intended to hinder, delay, or defraud the Plaintiff.

According to the Debtor, she transferred the Property when she did and in the manner she did to generate cash flow to fund her and her Husband's legal defense and to disentangle herself financially from her Husband. Transcript at 12, *In re Bowen*, No. 12-06099, ECF No. 49. The Debtor claims to have had no intent to hinder, delay, or defraud the Plaintiff in transferring the Property when she did. *Id.* While the timing of the transfer on the eve of trial appears inherently suspicious, the facts of the case corroborate the Debtor's testimony and lead the Court to believe that Debtor did not actually intend to hinder, delay, or defraud the Plaintiff.

In particular, after satisfying the outstanding obligations associated with the property, the remaining proceeds from the sale were used to pay for legal fees incurred in relation to the personal injury suit brought by Plaintiff. *Id.* at 36. As a defendant in that suit, Debtor was the

beneficiary of the legal representation paid for by those proceeds. Had none of the sale proceeds been used to pay for legal services or other debts, the Court would have a much harder time finding that Debtor's intentions were honest. *See Belmont Wine Exchange v. Nascarella (In re Nascarella)*, 492 B.R. 914, 917 (Bankr. M.D. Fla. 2013) (citing *In re Miller*, 39 F.3d 301) (finding that the transfer of property to pay for existing debts helped to establish that debtors did not have an actual intent to hinder, delay, or defraud their creditors). In addition to the proceeds, the transfer of the property eliminated two mortgage payments and allowed the Debtor's Husband, who had assumed the responsibility of paying the mortgages, to use those funds to pay for the couple's joint defense instead. Transcript at 15 – 16, *In re Bowen*, No. 12-06099, ECF No. 49.

Also of importance is the fact that one of the parcels of property had been on the market for approximately a year before it was finally sold to the Debtor's then-sister-in-law in July of 2011. *Id.* at 33. The fact that part of the property was being openly and honestly sold for such a long period of time leads the Court to believe that the intent was to liquidate, rather than hinder, delay, or defraud. There was no secret sale in this case, and the Debtor and her Husband were not attempting to hide the fact that their property was for sale.

## CONCLUSION

Based on the facts of the case, the Court determines that the Debtor did not have the actual intent to hinder, delay, or defraud the Plaintiff. Without proof of actual intent by a preponderance of the evidence, the Plaintiff has not carried her burden, and her request to deny the Debtor's discharge cannot be granted. The Court will enter a contemporaneous order consistent with this opinion. Copies of this memorandum opinion should be sent to the Plaintiff, Plaintiff's counsel, the Debtor, Debtor's counsel, and the Chapter 7 Trustee.

11

Date: October 4, 2013

/s/ Rebecca B. Connelly
Rebecca B. Connelly
U. S. Bankruptcy Judge